IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CHRISTOPHER DESHAUN MONTGOMERY                                      PLAINTIFF

v.                              Civil No. 5:24-cv-05132-TLB-CDC

DETECTIVE KELLY LANGE,
Benton County Drug Unit (BCDU);
JON HODOWAY, BCDU; BLAINE
MILLER, BCDU; SERGEANT
JOHN TYNON, BCDU; ALLISHA
WHITTED, McCallister's Deli/BCDU;
OFFICER C. JOHNSON, Bentonville
Police Department (BPD); OFFICER
COURY, BPD; PROSEUTING ATTORNEY
JOSHUA ROBINSON; DEPUTY
PROSECUTING ATTORNEY BROOKE
BONNETT; and JOSH COOKINHAM,
BCDU                                                                 DEFENDANTS

## MAGISTRATE JUDGE'S SCREENING REPORT AND RECOMMENDATION

This is a civil rights action filed by Plaintiff, Christopher D. Montgomery ("Montgomery"), under 42 U.S.C. § 1983. The case was directly assigned to the undersigned Magistrate Judge. However, because not all parties to the action have consented to the jurisdiction of the undersigned, and this document will be dispositive of Montgomery' claims, this document will be filed as a Report and Recommendation and the case will automatically be reassigned to United States District Judge Timothy L. Brooks. 28 U.S.C. § 636(c); Rule 73 of the Federal Rules of Civil Procedure, and General Order 2024-02.

1

The case is before the Court for preservice screening pursuant to 28 U.S.C. § 1915A.[1] Under § 1915A, the Court is required to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

## I.  BACKGROUND

According to the allegations of the Amended Complaint, on May 18, 2023, Allisha and Chris Whitted informed the Benton County Drug Unit ("BCDU") members Defendants Lange, Miller, Hodoway, Cookinham and Tynon that they could purchase two 8-balls of methamphetamine for $300 from Montgomery at his place of employment, Helping Hands. (ECF No. 6 at 5). The Whitteds were provided with $300 of "drug fund money." *Id.* at 6. While Montgomery was working on the dock at Helping Hands, Montgomery alleges the Whitteds provided the BCDU with 7.6 grams of methamphetamine. *Id.* at 5-6. Although Montgomery maintains the methamphetamine belonged to the Whitteds, he states they claimed they purchased the drugs from him. *Id.* When Montgomery took his lunch break, he returned to his hotel, the Home Towne Suites. (ECF No. 6 at 6). Montgomery asserts he was followed by Defendants Miller and Hodoway. *Id.* Montgomery asserts Defendants Lange, Tynon, Hodoway, Miller, Cookinham and the Whitteds working "18504 Buy 1 Narrative CI Sensitive Case Number 2023-ooo-18504," violated his constitutional rights. *Id.*

On October 15, 2023, Defendant Johnson drove to Montgomery's residence and entered the garage where Montgomery was at the time. (ECF No. 6 at 9). Defendant Johnson informed Montgomery an arrest warrant had been issued based on a charge of delivery of a controlled substance. *Id.* Montgomery was arrested and transported to the Bentonville Police Department where he was fingerprinted and read his Miranda rights. *Id.* Officer Coury advised Montgomery

---

[1] Enacted as part of the Prison Litigation Reform Act.

that there was no information about the warrant. *Id.* Despite this, Montgomery states he was kept in custody. *Id.* Montgomery was then transported to the Benton County Detention Center. *Id.* Montgomery remained incarcerated until June 23, 2024, until the charge against him was dropped. *Id.* at 9-10.[2] Montgomery maintains "no facts or evidence ever materialized against me." *Id.* at 10.

On November 22, 2023, Montgomery states that Defendants Bonnett and Robinson, filed case number 2023-2079-1 against him based on the same alleged delivery of a controlled substance. (ECF No. 6 at 10). Montgomery asserts his freedom has been taken away and he has been incarcerated for eight months. *Id.*

Montgomery maintains the arrest warrant was based on the false information; he was wrongfully arrested and falsely imprisoned; he was harassed, and his character was defamed. (ECF No. 6 at 5, 7 & 9). As a result of Defendants' actions, Montgomery asserts he lost his employment, everything he owned, and suffered emotional and mental distress. *Id.* Montgomery has sued the Defendants in both their individual and official capacities.

As relief, Montgomery seeks compensatory damages for the injuries he has suffered multiplied by three. (ECF No. 6 at 13). He asks for $2,500 for each day he has been incarcerated. *Id.* Finally, he seeks punitive damages in the amount of $30 million because of Defendants "ruining" his life. *Id.*

## II. LEGAL STANDARD

Under § 1915A, the Court is obliged to screen the case prior to service of process being issued. The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are

---

[2] Montgomery alleges the charge against him was dropped on May 23, 2024. He does not indicate why he remained incarcerated until June 23, 2024.

frivolous, malicious, or fail to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action is malicious when the allegations are known to be false, or it is undertaken for the purpose of harassing or disparaging the named defendants rather than to vindicate a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 464 (E.D.N.C. 1987); *In re Tyler*, 839 F.2d 1290, 1293-94 (8th Cir. 1988). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded . . . to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (*quoting Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). This means "that if the essence of an allegation is discernable, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Jackson*, 747 F.3d at 544 (cleaned up). However, the complaint must still allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

### III.  ANALYSIS

Publicly available Arkansas court records indicate *State v. Montgomery,* 04CR-23-2079, was filed on October 17, 2023.[3] An arrest warrant had been issued for Montgomery based on the charge of delivery of a controlled substance—methamphetamine in violation of Ark. Code Ann. § 5-64-422. The probable cause affidavit reflects the charge was based on a controlled purchase by

---

[3] Case information is available on a database maintained by the Arkansas Judiciary. https://caseinfo.arcourts.gov/opad/case/04CR-23-2079 (last visited September 16, 2024).

confidential informants of methamphetamine from Montgomery. The criminal information recited that between April and May of 2023, Montgomery had delivered two grams or more but less than ten grams of a controlled substance, believed to be methamphetamine.

On June 6, 2024, a plea agreement was entered in 04CR-23-1469 and 04CR-23-2079 in which the State agreed to nol pros case 04CR-23-2079 in return for Montgomery pleading guilty in 04CR-23-1469 to one count of possession of methamphetamine (offense date of July 26, 2023) and one count of possession of drug paraphernalia (offense date of July 26, 2023). The prosecution agreed to recommend a sentence of six years in the Arkansas Division of Correction, nunc pro tunc to October 15, 2023. On May 23, 2024, the State's motion for nolle pros was granted. A sentencing order was entered on June 6, 2024, indicating 04CR-23-2079 had been nolle prossed.

### A. Individual Capacity Claims Against Prosecutors

Immunity is a defense to an individual capacity claim. *Roach v. Stouffer,* 560 F.3d 860, 870 (8th Cir. 2009) ("immunity, either absolute or qualified, is a *personal* defense that is available only when officials are sued in their individual capacities") (internal quotation marks and citation omitted). The United States Supreme Court in *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976), established the absolute immunity of a prosecutor from a civil suit for damages under 42 U.S.C. § 1983 "in initiating a prosecution and in presenting the State's case." *Id*. at 427. This immunity extends to all acts that are "intimately associated with the judicial phase of the criminal process." *Id.* at 430; s*ee also Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) (Prosecutor acting as an advocate for the state in a criminal prosecution is entitled to absolute immunity while a prosecutor acting in an investigatory or administrative capacity is only entitled to qualified immunity).

Montgomery has failed to allege Defendant Bonnett or Robinson engaged in any conduct other than prosecutorial functions. "Whatever [Defendants Bonnett's and Robinson's] motives may have been . . . [their] conduct in filing [and pursuing] the charges is protected by absolute immunity." *Sample v. City of Woodbury,* 836 F.3d 913, 916 (8th Cir. 2016). Accordingly, Defendants Bonnett and Robinson are entitled to absolute immunity on the individual capacity claims against them. *See also Brodnicki v. City of Omaha*, 75 F.3d 1261 (8th Cir. 1996) (County prosecutors were entitled to absolute immunity from suit).

### B. Official Capacity Claims Against Prosecutors

The Court turns to consideration of the official capacity claims against Defendants Bonnett and Robinson. In Arkansas, prosecuting attorneys are officers of the state. Ark. Const. amend. 80, §20.

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the state itself." *Will v. Michigan Dep't. of State Police,* 491 U.S. 58, 71 (1989) (citation omitted).

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against any one of the United States." U.S. Const. amend XI. "The Eleventh Amendment confirms the sovereign status of the States by shielding them from suits by individuals absent their consent." *Frew ex re. Frew v. Hawkins,* 540 U.S. 431, 437 (2004). "Eleventh Amendment jurisprudence is well-settled: 'a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment.'" *Burk v. Beene,* 948 F.2d 489, 492 (8th Cir. 1991) (quoting *Edelman v. Jordan,* 415 U.S. 651, 663 (1974)).

This bar exists whether the relief sought is legal or equitable. *Papasan v. Allain*, 478 U.S. 265, 276 (1986). Furthermore, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will,* 491 U.S. at 71.

Exceptions to the reach of the Eleventh Amendment exist only when the state has unequivocally waived its immunity or Congress has abrogated the immunity. *Hutto v. Finney,* 437 U.S. 678, 693 (1978). The State of Arkansas has not waived its sovereign immunity. *See e.g., Hadley v. North Ark. Cmty. Tech. Coll.,* 76 F.3d 1437, 1438 (8th Cir. 1996). Nor did Congress abrogate sovereign immunity when enacting § 1983. *Quern v. Jordan*, 440 U.S. 332, 345 (1979). The official capacity claims against Defendants Bonnett and Robinson are barred by the Eleventh Amendment.

### C. Defamation

Defamation alone is insufficient to support a claim under § 1983. *See e.g., Wade v. Goodwin,* 843 F.2d 1150, 1152 (8th Cir. 1988). In *Paul v. Davis,* 424 U.S. 693 (1976), the United States Supreme Court held a person's interest in his reputation is not considered liberty or property protected by the Due Process Clause of the Fourteenth Amendment. No cognizable defamation claim exists.

### D. Verbal Abuse or Harassment

To the extent Montgomery asserts a claim based on alleged verbal abuse or harassment, the claim fails as a matter of law. "Verbal threats do not constitute a constitutional violation." *Martin v. Sargent,* 780 F.2d 1334, 1339 (8th Cir. 1985).

### E. Claims against the Whitteds

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United

States. 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege that (1) each defendant acted under color of state law, and (2) that he or she violated a right secured by the constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999).

"Only a state actor can face § 1983 liability." *Doe v. North Homes, Inc.,* 11 F.4th 633, 637 (8th Cir. 2021) (citing *Youngblood v. Hy-Vee Food Stores,* 266 F.3d 851, 855 (8th Cir. 2001)). "Private individuals who commit torts, i.e., civil wrongs, against other private parties are generally not acting under color of state law when they commit those acts." *Blair v. Anderson,* No. 4:04cv3229, 2006 WL 2128010, *2 (D. Neb. July 26, 2006). But "in a few limited circumstances," a private entity [or private individual] "can qualify as a state actor," including "when the private entity [or individual] performs a traditional, exclusive public function," "when the government compels the private entity [or individual] to take a particular action" and "when the government acts jointly with the private entity [or individual]." *Halleck v. Manhattan Cmty. Access Corp.,* 587 U.S. 802, 809 (2019). Arguably, the Whitteds' could be considered state actors if they were "willful participants in joint activity with the State or its agents." *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 941 (1982). In *Lugar,* the Supreme Court made clear that if a party's conduct meets the requirements for state action, the same acts also qualify as actions taken under color of law for purposes of § 1983. *Lugar,* 457 U.S. at 935.

"[T]he mere furnishing of information to a law enforcement officer, even if the information is false, does not constitute joint activity with state officials." *Gibson v. Regions Fin. Corp.,* 557 F.3d 842, 846 (8th Cir. 2009); *see also Wickersham v. City of Columbia,* 481 F.3d 591, 598 (8th Cir. 2007) ("[T]he mere invocation of state legal procedures, including police assistance, does not convert a private party into a state actor"). In this case, Montgomery has alleged that the Whitteds'

actions included not only the furnishing of initial information to law enforcement about Montgomery being a potential source of drugs but also their agreement to participate in a controlled purchase of drugs from Montgomery and their subsequent false report that they had in fact purchased drugs from Montgomery.

On the surface, it appears the Whitteds did more than allegedly provide false information to law enforcement. However, focusing too much on the existence of the agreement to act as confidential informants serves to take the focus off the alleged unconstitutional deprivation. *See e.g., Palafox v. Spiller,* No. 18-cv-1155-NJR, 2018 WL 3037398, *2 (S.D. Ill. June 19, 2018) ("But mere cooperation with prison officials—even if the cooperation was incentivized or if the resulting information proved inaccurate—is insufficient to support an inference that the John Doe defendants conspired with officials to violate Plaintiff's constitutional rights."). The decision of the Whitteds to act as confidential informants deprived Montgomery of no constitutional guarantees. The Eighth Circuit Court of Appeals has clearly stated that "[t]he one unyielding requirement is that there be a 'close nexus' not merely between the state and the private party, but between the state and the alleged deprivation itself." *Wickersham,* 481 F.3d at 597. Montgomery does not allege the Whitteds acted together with or obtained significant aid from the law enforcement officials when they falsely reported they had purchased the drugs from him. In making the false report, the Whitteds cannot be said to have "willfully participated in joint activity with a state actor to deprive [Montgomery] of a constitutionally protected right." *McNeally v. HomeTown Bank,* ___ F. Supp. 3d ___, 2024 WL 1255538, *5 (D. Minn. March 25, 2024) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970)). Instead, Montgomery has alleged they planned to retain the $300 in drug money. Absent is any allegation that the Whitteds and the law

9

enforcement officers shared a common unconstitutional goal. The Whitteds cannot be said to have been state actors. No cognizable § 1983 claim is stated against them.

### F. Claims against Remaining Defendants

#### (1). Defendants Johnson and Coury

Montgomery has failed to allege a cognizable claim against Defendants Johnson and Coury. The only allegation against Defendant Johnson is that he arrested Montgomery pursuant to an outstanding arrest warrant. "An arrest executed pursuant to a facially valid warrant generally does not give rise to a cause of action under 42 U.S.C. § 1983 against the arresting officer." *Fair v. Fulbright,* 844 F.2d 567, 569 (8th Cir. 1988) (citing *Baker v. McCollan,* 443 U.S. 137 (1979)). In this case, there is no allegation that Defendant Johnson was involved in the procurement of the warrant or had any knowledge about the criminal charge other than the fact that a warrant existed for Montgomery's arrest. No plausible claim is stated against Defendant Johnson.

Similarly, the only allegation against Defendant Coury is that he advised Montgomery they had no information regarding the warrant. "[T]he facts alleged must be enough to raise a right to relief above the speculative level." *In re Pre-Filled Propane Tank Antitrust Litig.,* 860 F.3d 1059, 1063 (8th Cir. 2017) (en banc). No plausible claim is stated against Defendant Coury.

#### (2). Defendants Lange, Hodoway, Miller, Tynon, and Cookinham

As mentioned, Montgomery alleges each of these Defendants were involved in setting up the drug buy and were present at his place of employment. With respect to Defendants Hodoway and Miller, Montgomery indicates they followed him while he was on his lunch break. Montgomery alleges Defendant Blaine caused the arrest warrant to be wrongfully issued. Further, Montgomery contends the warrant resulted in his wrongful arrest on October 15, 2023, and his subsequent imprisonment until the charges were nol prossed.

While Montgomery maintains the entire course of events was unconstitutional, the Court believes the essence of the cause of action lies with the alleged wrongful issuance of the arrest warrant based on false information provided by the Whitteds.

In *Franks v. Delaware*, 438 U.S. 154, 171 (1978), "the Supreme Court defined a limited exception to the presumptive validity of an affidavit supporting a search warrant application." *United States v. Ozar*, 50 F.3d 1440, 1143 (8th Cir. 1995).

> Under *Franks v. Delaware*, if the government intentionally includes material false statements in its warrant affidavits, or includes material false statements with reckless disregard for the truth that is the legal equivalent of intentional falsehood, a suppression court must set aside those statements and then review the remaining portions of the affidavits to see if what remains is sufficient to establish probable cause. Defendants bear the burden of proving the intentional or reckless inclusion of false statements in a warrant affidavit.

*Id.* (internal quotation marks and citation omitted).

This same analysis applies to § 1983 claims alleging a probable cause affidavit for an arrest warrant included false information or omitted truthful information. *Howe v. Gilpin*, 65 F.4th 975 (8th Cir. 2023); *see also Estate of Nash v. Folsom*, 92 F.4th 746, 754 (8th Cir. 2024) (noting *Franks* had been extended to cover recklessly omitted information).

> Including a false statement in a warrant affidavit is a *Franks* violation when the defendant establishes by a preponderance of the evidence that (1) the affiant knowingly and intentionally, or with reckless disregard for the truth, includes a false statement in a warrant affidavit, and (2) the false statement was necessary to the finding of probable cause.
>
> Omitting information violates *Franks* when 1) . . . facts were omitted with the intent to make, or in reckless disregard of whether they thereby make, the affidavit misleading, and 2) . . . the affidavit, if supplemented by the omitted information, could not support a finding of probable cause.

*Estate of Nash*, 92 F.4th at 754 (internal quotation marks and citations omitted). Innocent mistakes or negligence do "not suffice to demonstrate reckless or deliberate falsehood." *United States v. Mashek*, 606 F.3d 922, 928 (8th Cir. 2010).

11

"In a § 1983 case, the issues are whether 'the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable,' and, if deliberate falsehood is alleged, whether the affidavit is truthful, which 'means that the information put forth is believed or appropriately accepted by the affiant as true. Omissions and falsehoods that are immaterial or not supported by the record do not suffice.'" *Howe*, 65 F.4th at 980 (quoting *Morris v. Lanpher*, 563 F.3d 399, 402 (8th Cir. 2009) (cleaned up)).

Montgomery has not alleged that Defendants Lange, Hodoway, Miller, Tynon or Cookinham knowingly or deliberately put falsehoods in the warrant affidavit or that their belief in the existence of probable cause was unreasonable. Instead, he merely alleges the Whitteds kept the drug money, turned over their own drugs, and told the Defendants the drugs had been purchased from Montgomery. In short, Montgomery has alleged the Defendants Lange, Hodoway, Miller, Tynon, and Cookinham were themselves hood winked by the Whitteds. These allegations are insufficient to support a claim for false arrest or false imprisonment. No plausible claim has been stated against Defendants Lange, Hodoway, Miller, Tynon or Cookinham. Absent a cognizable claim, there can be no official capacity liability on the part of the governmental employers. *See e.g., Malone v. Hinman,* 847 F.3d 949, 955 (8th Cir. 2017) (Absent a constitutional violation by the individual officers, there can be no § 1983 liability for their governmental employers).

## IV.  CONCLUSION

Accordingly, it is recommended that all claims be dismissed against the Defendants for failure to state claims upon which relief may be granted or because they are entitled to immunity. 28 U.S.C. § 1915A(b).

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are**

**reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**RECOMMENDED** this 24th **day of September 2024**.

/s/ *Christy Comstock*
HON. CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE

13